## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.:

**JENNIFER RIVERA** individually, and on
behalf of others similarly situated,

    Plaintiff,       Hon.:

vs.            Mag.:

**GLOBAL RESPONSE, LLC.**,
a Florida Limited Liability Company,

    Defendant.

---

### COLLECTIVE AND CLASS ACTION COMPLAINT WITH JURY DEMAND

 Plaintiff Jennifer Rivera ("Plaintiff"), individually and on behalf of all others similarly situated, by and through her attorneys, hereby brings this Collective and Class Action Complaint against Defendant, Global Response, LLC. (hereinafter referred to as "Global Response" or "Defendant"), and states as follows:

### INTRODUCTION

 1. This is a collective and class action brought pursuant to 29 U.S.C. § 216(b) and Fed. R. Civ. P. 23 by Plaintiff, individually, and on behalf of all similarly situated persons, known and unknown, arising from Defendant's willful violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq*., state contract laws, and common law claims of unjust enrichment.

 2. Defendant is in the call center services business, and, according to Defendant's website, "provides outsourced customer service for the world's top brands." *See*, https://www.globalresponse.com/ (last visited Mar. 9, 2021). In order to provide the

aforementioned customer service, Defendant employs thousands of call center employees at brick-and-mortar call centers, commonly referred to by Defendant as contact centers, throughout the United States. More specifically, Defendant maintains contact centers in Margate, Florida; Gwinn and Iron River, Michigan; and La Crosse, Wisconsin.[1]

3.     Defendant uses a number of titles, including but not limited to "Customer Service Representative" and "Brand Specialist," to refer to its contact center agents. For purposes of this lawsuit, there are no material differences between those positions, so they are collectively referred to herein as "Customer Service Representatives" or "CSRs."

4.     Defendant's CSR jobs are hourly, non-exempt positions that typically pay a several dollars more than federally mandated minimum wage.

5.     Defendant employed Plaintiff as an hourly contact center employee with the job title of "Customer Service Representative."

6.     The United States Department of Labor ("DOL") recognizes that call center jobs, like those held by Defendant's CSRs, are homogenous; in July 2008,  the DOL issued Fact Sheet #64 to alert call center employees to some of the abuses that are prevalent in the industry.[2]

7.     One of those abuses, which is at issue in this case, is the employer's refusal to pay for work from the beginning of the first principal activity of the workday to the end of the last principal activity of the workday." *Id*. at p. 2.

8.     More specifically, DOL Fact Sheet #64 condemns an employer's non-payment of an employee's necessary pre-shift activities: "An example of the first principal activity of the day

---

[1]  *See*,  https://www.globalresponse.com/locations/  (last visited Mar. 9, 2021). Global Response**TM**, a trade name for Defendants' parent company, prides itself in being "one of the largest and most technologically advanced contact centers in the United States."

[2]  *See* DOL Fact Sheet #64: Call Centers under the Fair Labor Standards Act (FLSA), *https://www.dol.gov/whd/regs/compliance/whdfs64.pdf* (last visited Mar. 9, 2021).

for agents/specialists/representatives working in call centers includes starting the computer to download work instructions, computer applications and work-related emails." *Id.* Additionally, the FLSA requires that "[a] daily or weekly record of all hours worked, including time spent in pre-shift and post-shift job-related activities, must be kept." *Id.*

9.      Defendant does not compensate its CSRs, like Plaintiff, for all work performed. Instead, Defendant requires its CSRs to perform compensable work tasks before and after their scheduled shifts and during their unpaid meal periods, when they are not logged into Defendant's timekeeping system. This policy results in CSRs not being paid for all time worked.

10.     Defendant also fails to compensate its CSRs, for example Plaintiff and all similarly situated employees, for pre- and mid-shift, off-the-clock work attributed to technical problems with the computers, networks, programs/applications, and/or phones they used daily.

## JURISDICTION AND VENUE

11.     This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under 29 U.S.C. § 201, *et seq*.

12.     Additionally, this Court has jurisdiction over Plaintiff's collective action FLSA claim pursuant to 29 U.S.C. § 216(b), which provides that suit under the FLSA "may be maintained against any employer … in any Federal or State court of competent jurisdiction."

13.     Defendant's annual sales exceed $500,000 and it has more than two employees, so the FLSA applies in this case on an enterprise basis.  Defendant's CSRs engage in interstate commerce and, therefore, they are also covered by the FLSA on an individual basis.

14.     A private party may also bring an action for damages for breach of contract under the common law.  Plaintiff's breach of contract claims originate from the same facts that form

the basis of her federal claims.  Thus, the Court has supplemental jurisdiction over Plaintiff's breach of contract claims pursuant to 28 U.S.C. §1367.

15.     Plaintiff's state-law claims originate from the same facts that form the basis of her federal claims.  Thus, the Court also has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. §1367.

16.     This Court has personal jurisdiction over Defendant because it does business within the state of Florida and has its headquarters in Margate, Florida.

17.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c) because Defendant employs CSRs in this district, conducts business in this district, is headquartered in this district, and a substantial portion of the events that give rise to the Plaintiff's claims occurred in this district.

## PARTIES

18.     Plaintiff Jennifer Rivera is a resident of Florida, and was employed by Defendant as an hourly CSR from approximately October 2019 through December 2019.  Ms. Rivera signed a consent form to join this lawsuit, **Exhibit A**.

19.     Defendant is a Florida limited liability corporation with its headquarters and principal office located at 777 South State Rd. #7, Margate, Florida 33068.  Defendant is registered to do business in Florida, with a business identification number of 59-1554822, and its Registered Agent for service of process in Florida is CT Corporation System, 1200 S. Pine Island Rd., Plantation, FL 33324.

20.     While Defendant's primary business has always been contact center services, it also "provide[s] warehouse, literature and shipping services for products sold by clients of [its] fulfillment company located in Fort Lauderdale, Florida. [Defendant] also provide[s] data entry

services for some clients, and local and long distance telephone service for others."

21.     Upon information and belief, during the relevant time, Defendant has employed thousands of CSRs to assist its customers with their customer service needs.

## GENERAL ALLEGATIONS

22.     CSRs are typically paid at a rate of approximately $10.50 to $12.00 per hour.

23.     CSRs are mostly employed on a full-time basis (meaning more than thirty (30) hours per week) and on some weeks worked over forty (40) hours in a single week, but in other weeks worked less than forty (40) hours.

24.     Prior to being hired, CSRs receive an offer from Defendant that sets forth the requirements of a CSR, the job duties, and the offered rate of pay.

25.     Plaintiff received such an offer from Defendant, and she accepted Defendant's offer to serve as a CSR with the understanding that her base wage rate, most recently $11.50 per hour, would be paid as promised.

26.     Plaintiff performed under the contract by carrying out her job duties and responsibilities. More specifically, Plaintiff assisted customers of various stores like (Lane Bryant) over the phone in placing and tracking orders for goods and offering customers other products and services (such as shirts and shoes) to complement their purchases. *See* https://www.globalresponse.com/ (last visited Mar. 9, 2021). She additionally performed the required unpaid off-the-clock work explained below.

27.     Once hired, Defendant provides all CSRs with training on how to carry out their day to day job duties, including how to load and log into their computer programs at the beginning of the day, and how to log out at the end of the day. The training Defendant's CSRs receive is substantially, if not entirely, the same and all CSRs are subject to the same disciplinary

policies.

28.     During their training, CSRs are taught, *inter alia*, how to open and use Defendant's computer networks and software programs/applications; how to track their time in Defendant's timekeeping system, Oracle; the importance of attendance and schedule expectations; and Defendant's policies related to each topic.

29.     Plaintiff and other similarly situated CSRs are trained or instructed not to clock into Oracle until they have loaded all of their essential work-related computer programs and applications so they can be prepared to take calls the moment they begin their shift.

30.     All of Defendant's CSRs use the same or similar computer networks, software programs, and applications in the course of performing their job responsibilities.   These programs and applications are integral and an important part of the CSRs' work and they cannot perform their jobs without them.

31.     Once training is completed, Defendant requires its CSRs to follow daily computer login procedures.

32.     In order to perform their job, Plaintiff and all other CSRs are required to boot up and log in to various computer networks, software programs and applications, in order to access information necessary to perform their job functions.  However, Plaintiff and all other CSRs are not actually "clocked in" for their shifts until after the computer boot-up and login process is complete.

33.     The pre-shift off-the-clock time Plaintiff and all other CSRs spend booting up and logging in to their computers directly benefits Defendant and is integral and indispensable to the CSRs' job responsibilities.

34.     Plaintiff and other similarly situated CSRs are also trained or instructed to clock-

out before closing all work applications and systems to make certain they are clocked-out the moment they are done fielding calls.

35.     After clocking out of Defendant's timekeeping system and pursuant to Defendant's policies, procedures and direction, Defendant's CSRs are required to catch up on work e-mails and work-related instructions/information. The post-shift off-the-clock work Plaintiff and similarly situated CSRs perform directly benefits Defendant and is an integral and indispensable aspect of the CSRs' job duties.

36.     Defendant's CSRs also perform off-the-clock work when returning from lunch, for example undergoing some or all of the computer boot up process mentioned above, and when they experience technical difficulties, which kicks them out of Defendant's timekeeping system.

37.     Despite knowing Plaintiff and all other CSRs perform this pre-, mid- and post-shift work, Defendant and its managers fail to make any effort to stop or disallow it and instead suffer and permit it to happen.

38.     Defendant possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs boot up and log into their computers each day, both pre- and mid-shift, along with the time they log into their telephone systems.

39.     Defendant also possesses, controls, and/or has access to information and electronic data indicating the times Plaintiff and all other CSRs catch up on work e-mails during their lunch breaks and after clocking out for the day, as well as the times its CSRs spend closing all work applications and systems and shutting down their computers after their shifts.

40.     Defendant also possesses, controls, and/or has access to information and electronic data indicating when Plaintiff and all other CSRs experience down time due to technical issues.

41. Because Defendant requires its CSRs to perform pre- mid- and post-shift work off-the-clock, the hours tracked in Oracle are inaccurate representations of the total amount of time CSRs spend working for Defendant. Thus, the hours reflected on the CSRs' paystubs are also inaccurate representations of the hours they worked.

42. Despite its ability to track the amount of time Plaintiff and other CSRs spend in connection with the pre-shift boot-up and login process, mid-shift boot-up process, post-shift shutdown process and other work-related tasks, and technical downtime, Defendant fails to pay Plaintiff and other CSRs for the off-the-clock work they perform each shift, thus breaching its contracts with its CSRs.

**A.** **Pre-Shift Off-the-Clock Work**

43. Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs are required to start up and log into various secure computer networks and software programs/applications in order to access information.

44. More specifically, in order to perform their jobs and prior to the beginning of each scheduled shift, Plaintiff, along with the other CSRs, was required to complete the following tasks:

    a. Turn on her computer;

    b. Wait for Oracle to load, and then enter a user number;

    c. Enter a Pin number to open the OMS application;

    d. Open Kobe and enter a username and password;

    e. Open notations, notifications, sales, etc. within Oracle;

    f. Log into various computer networks, other software programs and applications; and

g.   Make herself available to take calls and clock in.

45.     The above tasks take substantial time on a daily basis with said time ranging from eight (8) to ten (10) minutes per day, and even longer on days where Defendant's computer networks and programs are not working properly.

46.     Defendant's CSRs complete this process before each shift and before they can field phone calls; however, they are not actually "clocked in" for their shifts until *after* they start-up their computer, open the essential programs/applications, enter their credentials (password and username), log into their phone system, and change their status to "available" to take calls.

47.     As a result, CSRs, including Plaintiff, spend between eight (8) and ten (10) minutes or more at the beginning of each shift performing off-the-clock (uncompensated) work for Defendant.

48.     The unpaid off-the-clock work performed prior to each shift by Plaintiff and other CSRs is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**B.     Mid-Shift Off-the-Clock Work**

49.     Defendant promises its CSRs one unpaid 30-minute meal period each eight hour shift (the bare minimum required by federal law).

50.     Under federal law, in order to deduct an unpaid meal period from an employee's compensable time, an employee must be completely relieved of his or her employment duties for the entire meal period. 29 C.F.R. § 785.19(a) states:

> ***Bona fide meal periods.*** Bona fide meal periods are not work time. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be <u>completely relieved</u> from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona

fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating. (emphasis added).

51.     Instead of complying with the law, Defendant does not provide CSRs with bona fide meal periods because it requires the CSRs to resume taking live calls promptly at the end of their scheduled meal breaks, meaning that the CSRs must return to their computer stations prior to the end of their unpaid meal breaks to log back in and reconnect to computer programs.

52.     Some of the programs have auto-log out features, which automatically log the CSRs out because they are idle for too long while at lunch.

53.     Only after Defendant's CSRs reboot the programs that they are automatically logged out of are the CSRs allowed to clock in to Defendant's timekeeping system.

54.     The work performed by Defendant's CSRs during their unpaid meal breaks takes substantial time on a daily basis, in the range of eight (8) to ten (10) minutes per shift, but CSRs are not paid for this time.

55.     The unpaid off-the-clock work Plaintiff and other CSRs perform during their lunch breaks and prior to clocking back in to Defendant's timekeeping system is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**C.      Technical Down Time**

56.     Additionally, in the course of performing their jobs, Plaintiff and other CSRs regularly experience technical problems with their computer systems, which log them out of the time keeping systems and cause them to redo some or all of the boot up process.

57.     In these situations, the CSRs can spend up to an hour working with Defendant's tech team to resolve the problems.

58.     Defendant is aware of the time CSRs spend experiencing technical difficulties and working with Defendant's tech team to resolve these difficulties, and Defendant could pay CSRs for this time, but does not.

**D.      Post-Shift Off-the-Clock Work**

59.     Pursuant to Defendant's policies, training, and direction, Plaintiff and all other CSRs are required to clock-out before closing all work applications and systems to make certain they are clocked-out the moment they stop fielding calls.

60.     Also after clocking out, Defendant requires its CSRs to catch up on work e-mails and work related instructions/information.

61.     The post-shift off-the-clock work generally takes between eight (8) and ten (10) minutes per day, but Defendant's CSRs are not paid for this time.

62.     The post-shift off-the-clock work Plaintiff and other CSRs perform is compensable, directly benefits Defendant and the tasks undertaken in connection with the off-the-clock work are integral and indispensable to their job duties and responsibilities as CSRs.

**E.      Exemplary Work Weeks and Estimated Wages Owed**

63.     The FLSA and regular wage violations discussed herein occurred throughout Plaintiff's employment with Defendant. However, for purposes of illustration, Plaintiff offers the following exemplary workweeks.

64.     An example of a specific workweek in which Defendant failed to pay Plaintiff Rivera all overtime due for hours worked in excess of 40 hours (as mandated by the FLSA) includes the following:

**Plaintiff Jennifer Rivera**
**One Week Pay Period Covered by Deposit on December 6, 2019**

- Plaintiff worked more than 40 hours at a rate of $11.50 per hour and upon information and belief was paid $17.25 per hour in overtime.

- With pre-, mid- and post-shift off-the-clock work, Plaintiff should have been paid an additional 24 to 30 minutes or more at her overtime rate of $17.25 for each hour.

**Exhibit B**, Rivera Direct Deposit Records.

65.    An example of a specific workweek in which Defendant failed to pay Plaintiff Rivera all regular wages due for hours worked below 40 hours (in support of Plaintiff's breach of contract and unjust enrichment claims) includes the following:

**One Week Pay Period Covered by Deposit on November 29, 2019**

- Plaintiff worked less than 40 hours at a rate of $11.50 per hour.

- With pre-, mid- and post-shift off-the-clock work, Plaintiff should have been paid an additional 24 to 30 minutes or more at her regular rate of $11.50 for each hour.

*Id.*

66.    Defendant employed Plaintiff for *approximately* 13 weeks. Over those 13 weeks, Plaintiff estimates she worked 65 shifts (5 shifts per week). With a regular hourly rate of $11.50 per hour, a corresponding overtime rate of $17.25 per hour, and assuming an average of twenty-seven (27) minutes per shift, Defendant failed to pay Plaintiff somewhere in the neighborhood of at least $336.37 in wages.

67.    At this time, Plaintiff does not have access to her paystubs, so she is unable to calculate the precise amount of unpaid wages. However, Plaintiff derived the above estimate of straight time wages using the calculations below.

**Regular Rate Damages:**
13 non-overtime weeks (x) 5 shifts per week = 65 shifts in non-overtime weeks

0.45 hours per shift (x) $11.50 per hour = $5.175 per shift x 65 regular shifts = $366.37

68.     Because Plaintiff worked more than forty (40) hours some workweeks, the amount Defendant owes her is greater than $366.37. The estimations above also do not reflect liquidation of overtime damages, which Plaintiff asserts are appropriate because Defendant's violation of the FLSA was willful. *See*, 29 U.S.C. § 216(b).

**F.      The Off-the-Clock Work Results in Viable "Gap Time" Claims**

69.     "Gap time" claims are those "in which an employee has not worked 40 hours in a given week but seeks recovery of unpaid time worked, or in which an employee has worked over 40 hours in a given week but seeks recovery for unpaid work under 40 hours." *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 115 (2d Cir. 2013); *see Jernigan v. 1st Stop Recovery, Inc*., 2017 WL 3682332, at *2 n.1 (M.D. Fla. Aug. 25, 2017).

70.     Plaintiff, and similarly situated CSRs, regularly worked non-overtime hours (i.e. "gap time") for which she was not paid.

71.     During the weeks that CSRs do not work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of straight time wages. Gap time is compensable and therefore Plaintiff the other CSRs are entitled to unpaid "gap time" for the unpaid non-overtime work they perform. *See e.g., Jernigan,* 2017 WL 3682332, at *2 (permitting plaintiff to pursue her "gap time" claim);  *Martin v. Lowe's Companies, Inc.*, 5:20-CV-00015-KDB-DCK, 2020 WL 5369074, at *4 (W.D.N.C. Sept. 8, 2020) (holding that the plaintiff sufficiently alleged a plausible "gap time" claim under North Carolina law).

**G.     Defendant Benefitted from the CSRs' Off-the-Clock Work**

72.     At all relevant times, Defendant has required and has directly benefitted from the off-the-clock work performed by Plaintiff and all other CSRs in connection with the pre-, mid-

and post-shift activities described above.

73.    At all relevant times, Defendant has controlled the work schedules, duties, protocols, applications, assignments, and employment conditions of Plaintiff and all other CSRs.

74.    At all relevant times, Defendant has been able to track the amount of time Plaintiff and all other CSRs spend in connection with the pre-, mid- and post-shift activities; however, Defendant has failed to do so and has failed to compensate Plaintiff and all other CSRs for the off-the-clock work they performed.

75.    At all relevant times, Plaintiff and all other CSRs have been non-exempt hourly employees, subject to the requirements of the FLSA and related state laws.

76.    At all relevant times, Defendant used its attendance and adherence policies against Plaintiff and the CSRs in order to pressure them into performing pre-, mid- and post-shift work, off-the-clock.

77.    Defendant expressly trained and instructed Plaintiff and all other CSRs to perform these off-the-clock work activities when they were not clocked into Defendant's timekeeping system.

78.    Defendant instructs CSRs to have all work applications and systems fully loaded before they clock-in, so that they are prepared to take calls the moment they clock-in at the start of their shift.  Similarly, at the end of the shift, Defendant instructs CSRs to clock-out before closing all work applications and systems to make certain they are clocked-out the moment they stop fielding calls, and to answer work e-mails and work-related instructions/information.

79.    Defendant similarly instructs its CSRs to have all work applications and systems fully loaded the moment their lunch breaks conclude so they can be prepared to field calls.

80.    At all relevant times, Defendant's policies and practices deprived Plaintiff and the

CSRs of wages owed for the pre-, mid- and post-shift activities they performed.

81.     During the weeks that CSRs work over forty (40) hours in a workweek, the outcome of Defendant's policies and practices is a deprivation of overtime wages, which are compensable under the FLSA.

82.     Defendant is in possession of the payroll and timekeeping records that will illustrate exactly which weeks Plaintiff worked over forty (40) hours and exactly which weeks worked under forty (40) hours.

83.     Defendant has known or should have known that the time spent by Plaintiff and other CSRs in connection with the pre-, mid- and post-shift activities is compensable under the law. Indeed, in light of the explicit DOL guidance cited above, there is no conceivable way for Defendant to establish that it has acted in good faith.

84.     Unpaid wages related to the off-the-clock work described herein are owed to Plaintiff at the FLSA mandated overtime premium of one and one-half the Plaintiff's regular hourly rate because Plaintiff worked in excess of forty (40) hours in a workweek.

## COLLECTIVE ACTION ALLEGATIONS

85.     Plaintiff brings this action pursuant to 29 U.S.C. § 216(b) of the FLSA on behalf of themselves and on behalf of:

> *All current and former hourly CSRs who worked for Global Response Corporation in Florida at any time during the three years preceding the filing of this Complaint through judgment.*

(hereinafter referred to as the "FLSA Collective").  Plaintiff reserves the right to amend this definition if necessary.

86.     Defendant is liable under the FLSA for, *inter alia*, failing to properly compensate Plaintiff and others similarly situated.

87.     Excluded from the proposed FLSA Collective are Defendant's executives, administrative and professional employees, including computer professionals and outside sales persons.

88.     Consistent with Defendant's policies and practice, Plaintiff and the proposed FLSA Collective were not paid for all premium overtime compensation when they worked beyond forty (40) hours in a workweek.

89.     All of the work Plaintiff and the proposed FLSA Collective performed was assigned by Defendant, and/or Defendant was aware of all of the work the Plaintiff and the proposed FLSA Collective performed.

90.     As part of its regular business practice, Defendant intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and the members of the FLSA Collective.  This policy and pattern or practice includes, but is not limited to:

        a.      Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for all premium overtime wages for hours that they worked off-the-clock in excess of forty (40) hours per workweek;

        b.      Willfully failing to pay its employees, including Plaintiff and the members of the FLSA Collective, for other off-the-clock work, such as tech time; the mid-shift boot up process; and the time spent post-shift closing all applications, networks and programs, shutting down their computers and performing other work-related tasks; and

        c.      Willfully failing to record all of the time that its employees, including Plaintiff and the members of the FLSA Collective, have worked for the benefit of Defendant.

91.     Defendant is aware, or should have been aware, that federal law requires it to pay Plaintiff and the proposed FLSA Collective members an overtime premium for all hours worked in excess of forty (40) per workweek.

92.     Defendant's unlawful conduct has been widespread, repeated, and consistent.

93.     A collective action under the FLSA is appropriate because the employees described above are "similarly situated" to Plaintiff under 29 U.S.C. § 216(b). The employees on behalf of whom Plaintiff brings this collective action are similarly situated because (a) they have been or are employed in the same or similar positions; (b) they were or are performing the same or similar job duties; (c) they were or are subject to the same or similar unlawful practices, policy, or plan; and (d) their claims are based upon the same factual and legal theories.

94.     The employment relationships between Defendant and every proposed FLSA Collective member are the same and differ only by name, location, and rate of pay. The key issues – the amount of uncompensated pre-, mid- and post-shift off-the-clock work and the amount of technical downtime owed to each employee – does not vary substantially among the proposed FLSA Collective members.

95.     There are many similarly situated current and former CSRs who have been underpaid in violation of the FLSA.  They would benefit from the issuance of a court-authorized notice of this lawsuit and the opportunity to join.

96.     Plaintiff estimates the FLSA Collective, including both current and former CSRs over the relevant period, includes thousands of members.  The precise number should be readily available from a review of Defendant's personnel and payroll records.

97.     Plaintiff estimates that Defendant employs approximately 1,500 CSRs at its Margate Florida contact center at any given time. *See*, https://www.globalresponse.com/locations/ (last visited Mar. 25, 2021). Assuming five (5) shifts per week, there are 7,500 shifts worked per week by the class.  A three-year look back would include 156 weeks.  Accordingly, within the past three years, the class worked an estimated

1,170,000 shifts. If there were 27 minutes of off-the-clock work per day, and assuming Defendant pays all CSRs a regular hourly rate of $11.50 per hour, then the unliquidated class damages range from $6,054,750.00 to $9,082,125.00. After liquidation, the class damages increase $12,109,500.00 to $18,164,250.00. All of the estimations discussed herein will be refined after class discovery is completed.

## RULE 23 FLORIDA CLASS ACTION ALLEGATIONS

98.     Plaintiff brings this action pursuant to Fed. R. Civ. P. 23(b)(2) and (b)(3) on behalf of themselves and on behalf of:

> *All current and former hourly CSRs who worked for Global Response Corporation in Florida at any time during the applicable statutory period.*

(hereinafter referred to as the "Rule 23 Florida Class").  Plaintiff reserves the right to amend this definition if necessary.

99.     The members of the Rule 23 Florida Class are so numerous that joinder of all Rule 23 Florida Class members in this case would be impractical.  Plaintiff reasonably estimates there are hundreds, if not thousands, of Rule 23 Florida Class members.  Rule 23 Florida Class members should be easy to identify from Defendant's computer systems and electronic payroll and personnel records.

100.    There is a well-defined community of interests among Rule 23 Florida Class members and common questions of law and fact predominate in this action over any questions affecting individual members of the Rule 23 Florida Class.  These common legal and factual questions, include, but are not limited to, the following:

a.      Whether the pre-shift time Rule 23 Florida Class members spend on startup and login activities each session is compensable time under applicable law;

18

b. Whether the mid-shift time Rule 23 Florida Class members spend rebooting Defendant's programs, applications and networks during their unpaid lunch breaks before they return from their breaks is compensable time under applicable law;

c. Whether the post-shift time Rule 23 Florida Class members spend closing all programs, applications and networks and catching up on work e-mails and work related instructions/information is compensable time under applicable law;

d. Whether the technical down time Rule 23 Florida Class members spend troubleshooting is compensable time under applicable law;

e. Whether Defendant's non-payment of wages for all compensable time amounted to a breach of contract; and

f. Whether Defendant's non-payment of wages for all compensable time resulted in an unjust enrichment to Defendant.

101. Plaintiff's claims are typical of those of the Rule 23 Florida Class in that she and all other Rule 23 Florida Class members suffered damages as a direct and proximate result of the Defendant's common and systemic payroll policies and practices. Plaintiff's claims arise from the same pay policies, practices, promises and course of conduct as all other Rule 23 Florida Class members' claims and her legal theories are based on the same legal theories as all other Rule 23 Florida Class members.

102. Plaintiff will fully and adequately protect the interests of the Rule 23 Florida Class and Plaintiff retained counsel who are qualified and experienced in the prosecution of Florida wage and hour class actions. Neither Plaintiff nor her counsel have interests that are contrary to, or conflicting with, the interests of the Rule 23 Florida Class.

103. A class action is superior to other available methods for the fair and efficient adjudication of this controversy, because, *inter alia*, it is economically infeasible for Rule 23 Florida Class members to prosecute individual actions of their own given the relatively small

amount of damages at stake for each individual along with the fear of reprisal by their employer.

104.    This case will be manageable as a Rule 23 Class action.  Plaintiff and her counsel know of no unusual difficulties in this case and Defendant has advanced networked computer and payroll systems that will allow the class, wage, and damages issues in this case to be resolved with relative ease.

105.    Because the elements of Rule 23(b)(3) are satisfied in this case, class certification is appropriate.  *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.*, 559 U.S. 393; 130 S. Ct. 1431, 1437 (2010) ("[b]y its terms [Rule 23] creates a categorical rule entitling a plaintiff whose suit meets the specified criteria to pursue his claim as a class action").

106.    Because Defendant has acted and refused to act on grounds that apply generally to the Rule 23 Florida Class and declaratory relief is appropriate in this case with respect to the Rule 23 Florida Class as a whole, class certification pursuant to Rule 23(b)(2) is also appropriate.

**COUNT I**
**FLSA COLLECTIVE ACTION**
**VIOLATION OF THE FAIR LABOR STANDARDS ACT,**
**29 U.S.C. § 201, *et seq*. -- FAILURE TO PAY OVERTIME**

107.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

108.    At all times relevant to this action, Defendant has been subject to the mandates of the FLSA, 29 U.S.C. § 201, *et seq*.

109.    At all times relevant to this action, Defendant has been engaged in interstate commerce, or in the production of goods for commerce, as defined by the FLSA.

110.    At all times relevant to this action, Plaintiff was an "employee" of Defendant within the meaning of 29 U.S.C. § 203(e)(1) of the FLSA.

111.    Plaintiff and other FLSA Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

112.     Plaintiff either: (1) engaged in commerce; or (2) engaged in the production of goods for commerce; or (3) was employed in an enterprise engaged in commerce or in the production of goods for commerce.

113.     At all times relevant to this action, Defendant "suffered or permitted" Plaintiff and all similarly situated current and former employees to work and thus "employed" them within the meaning of 29 U.S.C. § 203(g) of the FLSA.

114.     At all times relevant to this action, Defendant required Plaintiff and all the proposed FLSA Collective members to perform pre-, mid- and post-shift work off the clock, every shift, and Defendant failed to pay these employees the federally mandated overtime compensation for all work performed.

115.     The off-the-clock work performed every shift by Plaintiff and the proposed FLSA Collective is an essential part of their jobs and these activities and the time associated with these activities is not *de minimis*.

116.     In workweeks where Plaintiff and other FLSA Collective members worked forty (40) hours or more, the uncompensated off-the-clock work time, and all other overtime should have been paid at the federally mandated rate of 1.5 times each employee's regular hourly wage, including shift differential where applicable.  29 U.S.C. § 207.

117.     Defendant's violations of the FLSA have been knowing and willful. Defendant has known or could have determined how long it takes its CSRs to perform their off-the-clock work. Further, Defendant could have easily accounted for and properly compensated Plaintiff and the proposed FLSA Collective members for these work activities, but did not.

118.     The FLSA, 29 U.S.C. § 216(b), provides that as a remedy for a violation of the Act, an employee is entitled to his or her unpaid wages (including unpaid overtime), plus an

additional equal amount in liquidated damages (double damages), plus costs and reasonable attorneys' fees.

## COUNT II
## RULE 23 FLORIDA CLASS ACTION
## BREACH OF CONTRACT

119.   Plaintiff re-alleges and incorporates all previous paragraphs herein and further alleges as follows.

120.   "Claims for unpaid wages under Florida common law are typically pleaded as breach of contract claims. *Vega v. T-Mobile USA, Inc.*, 654 F.3d 1256, 1271 (11th Cir. 2009). In order to state a valid breach of contract claim, 'Florida law requires the plaintiff to plead and establish: (1) the existence of a contract; (2) a material breach of that contract; and (3) damages resulting from the breach.'" *Id*. at 1272 (citation omitted).

121.   At all times relevant to this action, Defendant had a binding and valid contract with Plaintiff and every other Rule 23 Florida Class member to pay each employee for each hour they worked at a pre-established (contractual) regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Florida Class members performed on behalf of Defendant.

122.   Evidence of these contracts include Defendant's letters offering employment, pay statements, and other documentary evidence in Defendant's possession.  Additionally, Defendant made verbal offers for payment at a specified wage for CSR work, which Plaintiff accepted and performed, but Defendant failed to perform by paying Plaintiff and the Rule 23 Class the promised wages.

123.   For example, Defendant offered (verbally and in writing) to compensate Plaintiff at a minimum of $11.50 per hour, if she agreed to perform services for Defendant as a CSR. Plaintiff accepted Defendant's offer and performed her duties as CSRs in reliance on the offer.

124.    Defendant breached its contractual promises by failing to pay CSRs at their fixed, pre-agreed upon hourly rate for *all* of the hours worked.

125.    Upon information and belief, each Rule 23 Florida Class member, including Plaintiff, was contractually entitled to a minimum hourly rate of approximately $10.60 per hour within the applicable period.

126.    Plaintiff and every other Rule 23 Florida Class member accepted the terms of Defendant's contractual promises contained in Defendant's offer letters and performed under the contracts by doing their jobs and carrying out the work they performed each shift, which included the unpaid off-the-clock work that was required of them in connection with pre-, mid- and post-shift work and technical downtime described herein.

127.    By not paying Plaintiff and every other Rule 23 Florida Class member the agreed upon hourly wage for the work they performed each shift in connection with the off-the-clock work described herein, Defendant systematically breached its contracts with Plaintiff and each member of the Rule 23 Florida Class.

128.    Defendant can easily ascertain the amount of damages owed to Plaintiff and the Rule 23 Florida Class members based on the allegations made in this complaint (specifically the amount of off-the-clock work claimed each shift) in conjunction with Defendant's payroll records, which will provide the number of shifts worked by each Rule 23 Florida Class member.

129.    Plaintiff and the Rule 23 Florida Class members' remedies under the FLSA are inadequate in this case to the extent Defendant paid them more than the federally mandated minimum wage of $7.25 per hour, but less than forty (40) hours per week (*i.e.*, pure "gap time" claims).

130.    Defendant also breached its duty of good faith and fair dealing by failing to keep

track of the time Plaintiff and other Rule 23 Class members spent performing off-the-clock activities, which is a fundamental part of an "employer's job."

131.    As a direct and proximate result of Defendant's contractual breaches, Plaintiff and the Rule 23 Florida Class members were damaged in an amount to be determined at trial.

**COUNT III**
**RULE 23 FLORIDA CLASS ACTION**
**UNJUST ENRICHMENT**

132.    Plaintiff re-alleges and incorporates all previous paragraphs herein.

133.    This Count is pled in the alternative to Count II, *supra*, pursuant to Fed. R. Civ. P. 8(d)(2)-(3).

134.    In Florida, a plaintiff may sue his employer for unjust enrichment for non-overtime (and non-minimum wage) wages, as a stand-alone cause of action, and that claim is not preempted by the FLSA.  *See, Hart v. JPMorgan Chase Bank, N.A.*, No 812CV00470T27TBM, 2021 WL 12914660, at *1 (holding "[t]he Amended Complaint also contains sufficient factual allegations to state a claim for unjust enrichment that is not preempted by the FLSA. While state common law claims that seek only unpaid overtime compensation or minimum wages that are guaranteed by the FLSA are preempted by federal law, common law claims that seek something other than what the FLSA can provide are not preempted.")

135.    At all times relevant to this action, Defendant promised Plaintiff and every other Rule 23 Florida Class member a pre-established regular hourly rate in consideration of the work duties Plaintiff and the Rule 23 Florida Class members performed for the benefit of Defendant.

136.    Plaintiff and every other Rule 23 Florida Class member relied upon Defendant's promise for the pre-established regular hourly rate and performed by doing their jobs and carrying out their required work duties.

137.     By not paying Plaintiff and every other Rule 23 Florida Class member the agreed upon hourly wage for the off-the-clock work they performed each shift, Defendant was unjustly enriched.

138.     Plaintiff and the Rule 23 Florida Class members performed off-the-clock work tasks at the request of and without objection by Defendant.

139.     Defendant received and accepted the above-referenced off-the-clock work services from Plaintiff and every other Rule 23 Florida Class member and enjoyed the benefits derived therefrom.

140.     Upon information and belief, Defendant used the monies owed to Plaintiff and every other Rule 23 Florida Class member to finance its various business ventures or pay its equity owners.

141.     Defendant has been unjustly enriched by the retention of monies received pursuant to the services Plaintiff and the Rule 23 Florida Class performed for Defendant's benefit, without having compensated Plaintiff and the Rule 23 Florida Class for the same.

142.     Plaintiff and the Rule 23 Florida Class suffered detriment due to Defendant's failure to compensate them for the off-the-clock work described herein, in that Plaintiff and the Rule 23 Florida Class were deprived of the ability to utilize that time, effort and their resources in a profitable manner.

143.     As a direct and proximate result of Defendant's actions, Plaintiff and every other Rule 23 Florida Class member suffered damages, including but not limited to, loss of wages.

WHEREFORE, Plaintiff requests the following relief:

      a.    An Order conditionally certifying this case as a collective action in accordance with 29 U.S.C. § 216(b) with respect to the FLSA claims set forth herein (Count I);

b.      An Order certifying this action as a class action (for the Rule 23 Florida Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's breach of contract claim (Count II);

c.      An Order certifying this action as a class action (for the Rule 23 Florida Class) pursuant to Rule 23(b)(2) and (b)(3) with respect to Plaintiff's unjust enrichment claim (Count III);

d.      An Order compelling Defendant to disclose in computer format, or in print if no computer readable format is available, the names and addresses of all proposed FLSA Collective members and Rule 23 Florida Class members, and authorizing Plaintiff to send notice of this action to all those similarly situated individuals, including the publishing of notice in a manner that is reasonably calculated to apprise the class members of their rights by law to join and participate in this lawsuit;

e.      An Order designating the Plaintiff as representative of the FLSA Collective and the Rule 23 Florida Class, and undersigned counsel as Class counsel for the same;

f.      An Order declaring Defendant violated the FLSA and the Department of Labor's attendant regulations as cited herein;

g.      An Order declaring Defendant's violations of the FLSA were willful;

h.      An Order declaring Defendant breached its contracts with Plaintiff and the members of the Rule 23 Florida Class by failing to pay them for each hour they worked at a pre-established (contractual) regularly hourly rate;

i.      An Order declaring Defendant was unjustly enriched by the off-the-clock work it required Plaintiff and the members of the Rule 23 Florida Class to perform;

j.      An Order granting judgment in favor of Plaintiff and against Defendant and awarding Plaintiff, the FLSA Collective and the Rule 23 Florida Class the full amount of damages and liquidated damages available by law;

k.      An Order awarding reasonable attorneys' fees and costs incurred by Plaintiff in filing this action as provided by statute;

l.      An Order awarding pre- and post-judgment interest to Plaintiff on these damages; and

m.      An Order awarding such other and further relief as this Court deems appropriate.

## JURY DEMAND

Plaintiff, individually and on behalf of all others similarly situated, by and through her attorneys, hereby demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and the court rules and statutes made and provided with respect to the above-entitled cause.

Dated: April 7, 2021

Respectfully Submitted,

*/s/ Andrew R. Frisch*
Andrew R. Frisch (FBN 027777)
Morgan & Morgan, P.A.
8151 Peters Road, Suite 4000
Plantation, Florida 33324
Telephone: (954) WORKERS
Fax: (954) 327-3013
AFrisch@forthepeople.com

Jason J. Thompson (*PHV* forthcoming)
Charles R. Ash, IV (*PHV* forthcoming)
Alana Karbal (*PHV* forthcoming)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, Michigan 48076
Telephone: 248-355-0300
jthompson@sommerspc.com
crash@sommerspc.com
akarbal@sommerspc.com

*Counsel for Plaintiff*